# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

BRIAN BUREN PEACE §
 §
 § Civil Action No. 4:17-CV-00626
v. § Judge Mazzant
 §
CITY OF DENTON, TEXAS, and DANIEL §
NEIGHBORS §
 §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Daniel Neighbors's Second Motion to Dismiss Under Rule 12, Alternative Motion for Rule 7 Reply (Dkt. #15). Having considered the pleadings, the Court finds that Defendant Neighbors's motion should be granted in part and denied in part.

## BACKGROUND

This is an excessive force case arising from a traffic stop involving Plaintiff Brian Peace ("Peace") and Officer Daniel Neighbors ("Officer Neighbors"). As a result of the incident, Peace alleges the City of Denton, Texas (the "City") and Officer Neighbors violated 42 U.S.C. § 1983, and Officer Neighbors individually committed assault under Texas state law.

On September 12, 2015, at approximately 9:00 p.m., Officer Marquilla Kilson ("Officer Kilson") initiated a traffic stop of a vehicle driven by Peace for defective tail lights as Peace pulled into the driveway of his residence.[1]

Peace's brother, Steven Peace ("Steven"), exited the home and began speaking with Officer Kilson, who requested backup assistance due to Steven's presence. Officers Glory Obono, Blake Jackson ("Officer Jackson"), Officer Neighbors, Chris Curtis ("Officer Curtis"), Cherlynn Hurd,

---

[1] Because this is a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all well-pleaded facts in Peace's Amended Complaint as true.

and Richard Ortiz arrived. The officers escorted Steven to an area near the home's porch, away from Officer Kilson and Peace, and placed Steven in handcuffs.

Officer Kilson began a dialogue with Peace regarding the reason for the stop. Officer Kilson then asked Officer Jackson to stand by with Peace while Officer Kilson stepped away to confer with Officer Neighbors behind Peace's vehicle about what had transpired. Peace then told Officer Jackson and Officer Curtis that he was going to reach in his car to turn off his headlights. Officer Jackson and Officer Curtis directed him not to do so. Peace then began reaching in his car but was pushed away by the officers. This commotion drew the attention of other officers at the scene and a struggle took place between Peace, Officer Jackson, and Officer Curtis.

Peace alleges that one of the officers tackled him to the ground to restrain him. Officers Jackson and Curtis then both restrained Peace by his arms. Officer Neighbors heard the commotion among the other officers and Peace and immediately ran towards Peace and began physically assaulting him. Officer Neighbors grabbed Peace behind his head with his left hand and punched him squarely in the face with his right hand. As a result of Officer Neighbors's first punch to his face, Peace slumped towards the ground, but was still held up by Officers Jackson and Curtis. Then Officer Neighbors punched Peace in the face for a second time. After falling to the ground, Peace was punched by Officer Neighbors for a third and fourth time.

While putting Peace in handcuffs, Officer Neighbors proceeded to brag, stating, "[That's called a KO punch." (Dkt. #11 at ¶ 17). Officer Kilson asked Officer Neighbors to be careful regarding Peace's injured arm while Officer Neighbors was handcuffing Peace. However, Officer Neighbors continued to roughly and unnecessarily grab and twist the injured arm while Peace was screaming in pain.

Peace alleges that due to Officer Neighbors's use of force, he suffered facial lacerations, a broken nose, and his left pupil has remained dilated and his vision blurry since the incident. Following the incident, Peace was charged with Assault on a Public Servant.

As a result of the underlying facts, on September 6, 2017, Peace initiated this suit against Defendants (Dkt. #1). On December 13, 2017, Peace filed his Amended Complaint (Dkt. #11). On December 22, 2017, Officer Neighbors filed his Second Motion to Dismiss, or in the Alternative, Motion for a Rule 7(a) Reply and a Stay of All Discovery (Dkt. #15). On December 29, 2017, the Court granted Officer Neighbors's Unopposed Motion for Stay of All Discovery (Dkt. #10) insofar as it related to staying discovery until further order of the Court, pending resolution of Officer Neighbors's qualified immunity defense (Dkt. #17). On January 15, 2018, Peace filed his response to the motion to dismiss (Dkt. #20). On January 22, 2018, Officer Neighbors filed his reply (Dkt. #21).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

**I.    § 1983 Qualified Immunity**

To establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically engaged in a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Creighton*,

5

483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id. Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court instructs courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

As a preliminary matter, Officer Neighbors asserts that the Fifth Circuit's *Schultea v. Wood* decision requires a higher pleading standard for cases involving a qualified immunity defense. *See* 47 F.3d 1427, 1430 (5th Cir. 1995). However, Officer Neighbors misconstrues the *Schultea* decision. In *Anderson v. Valdez*, the Fifth Circuit explained that its *Schultea* decision did not create a heightened pleading standard for claims in which the defendant answers asserting the defense of qualified immunity, but only that the "court *may [then], in its discretion*, insist that a plaintiff file a reply tailored to [the defendant's] answer [or motion to dismiss] pleading the defense of qualified immunity." 845 F.3d 580, 590 (5th Cir. 2016) (emphasis and alterations in the original) (quoting *Schultea,* 47 F.3d at 1433). Further, the court in *Anderson* clarified that *Schultea* still only requires the court to apply "Rule 8(a)(2)'s 'short and plain' standard" to the complaint. *Id.* (quoting *Schultea,* 47 F.3d at 1433). Thus, Peace does not need to satisfy a heightened pleading standard to state a claim in which Officer Neighbors answers with the defense of qualified immunity.

**A. Violation of an Actual Constitutional Right**

Peace alleges Officer Neighbors violated his Fourth Amendment rights by applying excessive force during his arrest. To prevail on an excessive-force claim, Peace must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper*, 844 F.3d at 522 (quoting *Elizondo*

6

*v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)).[2] In excessive-force claims, the reasonableness of an officer's conduct depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Specifically, the Court takes into consideration three factors—the *Graham* Factors—which include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* As such, the Court's inquiry is "whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Cooper*, 844 F.3d at 522 (alterations in original) (quoting *Graham*, 490 U.S. at 397).

1. **Severity of the Crime**

It is undisputed that Peace was pulled over for the offense of operating a motor vehicle with a defective tail lamp. (Dkt. #11 at ¶ 7; Dkt #15 at ¶ 9). In *Trammel v. Fuge*, the Fifth Circuit held that the offense of public intoxication, a Class C misdemeanor in Texas, militated against the use of force. 868 F.3d 332 (5th Cir. 2017). Under the Texas Transportation Code, operating a vehicle with defective tail lamps is classified as a misdemeanor, without further specification. *See* TEX. TRANSP. CODE §§ 547.004, 547.322. Further, the Texas Penal Code states that offenses designated misdemeanors in the Code without specification are Class C misdemeanors. TEX. PEN.

---

[2]Peace alleges the following facts showing that he sustained an injury due to Officer Neighbors's use of force: Peace suffered facial lacerations, a broken nose, and his left pupil has remained dilated and his vision blurry since the incident (Dkt. #11 at ¶ 19). These facts, taken as true, are sufficient to show that Peace sustained an injury, and the Court's focus turns to the second and third elements.

7

CODE §12.03. Thus, in addition to the fact that Peace's offense was a non-violent, non-drug related crime, Peace's offense was a Class C misdemeanor, which militates against the use of force. This factor favors Peace.

### 2. Immediate Threat to Safety of Officer or Others

Although Officer Neighbors primarily stands on his *Schultea* heightened pleading argument, he asserts that Peace was an immediate threat to the officer's safety because he had not been searched for weapons by any officer on the scene (Dkt. #15 at ¶ 14).

In *Cooper*, Officer Pressgrove pulled over Cooper on suspicion of driving under the influence. 844 F.3d at 521. After Officer Pressgrove administered a portable breath test, he returned to his patrol vehicle. *Id.* "Cooper panicked and fled on foot into a residential neighborhood" and hid inside a "small wood-fenced" area. *Id.* When Cooper fled, Officer Pressgrove did not know whether Cooper was armed. *Id.* In the Fifth's Circuit analysis addressing the second *Graham* factor, it found Cooper did not pose an immediate threat to the responding officers or others. *Id.* at 522–23. Specifically, the Fifth Circuit found that Cooper's fleeing the scene, while potentially intoxicated, into a nearby neighborhood did not present a situation where Cooper posed an immediate threat. *Id.* Further, although Officer Brown argued "the fact that Cooper was unsearched made Cooper more of a threat," the Fifth Circuit did not agree. *Id.* at 523 n.2. Instead, the Court held that "although this will sometimes be a relevant fact—for example, where a plaintiff is suspected of committing a violent crime—it is not enough, standing alone, to permit a reasonable officer to characterize a suspect as an immediate threat." *Id.*

Similar to *Cooper*, Peace alleges the following facts to support his claim that he was not an immediate threat at the time Officer Neighbors delivered the strikes at issue: (1) he was restrained by two officers when Officer Neighbors held Peace's head and delivered the first blow,

8

(2) he slumped toward the ground, still held by the two other officers, when Officer Neighbors delivered the second blow, (3) he was on the ground and appeared to be "knocked out" when Officer Neighbors delivered the third and fourth blows. (Dkt. #11 at ¶¶ 14–16). Thus, the Court finds Peace has pleaded sufficient facts to show that he was not an immediate threat to the safety of Officer Neighbors or others when the force was used.

### 3. Actively Resisting Arrest or Attempting to Evade Arrest by Flight

Peace alleges sufficient facts to show he was not actively resisting arrest when the force was used. It is undisputed that Peace was reaching into his car to turn off the headlights when he was tackled to the ground by the other officers present at the scene. (Dkt. #11 at ¶¶ 11–12; Dkt. #15 at ¶ 13).[3] As previously mentioned, Peace also alleges with factual detail that he was restrained by the other officers when Neighbors was delivering the blows at issue. Thus, Peace has pleaded with sufficient factual detail that he was not actively resisting arrest when the use of force occurred.

Therefore, because all three *Graham* factors weigh in favor of Peace, the Court finds Peace has pleaded facts sufficient to state a claim that Officer Neighbors' actions were objectively unreasonable.[4]

### B. Clearly Established Right at the Time of the Violation

The second question the Court must address in the qualified immunity analysis is "whether the right was clearly established at the time of the violation." *Cooper*, 844 F.3d at 522. "To answer that question in the affirmative, [the Court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a

---

[3] Peace does not assert that his rights were violated when the officers pushed and/or tackled him after he refused to obey their command and reached into his car in an attempt to turn off the headlights. Peace's claims of excessive force arise after he was restrained and/or on the ground.
[4] The Court makes such a determination resolving all doubts in favor of Peace.

high degree of particularity." *Id.* at 524 (quoting *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc)). But "this does not mean that 'a case directly on point' is required." *Id.* (quoting *Morgan*, 659 F.3d at 372). Rather, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* (quoting *Morgan*, 659 F.3d at 372 (emphasis in original)).

"The central concept is 'fair warning.'" *Id.* (quoting *Morgan*, 659 F.3d at 372; *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Newman*, 703 F.3d at 763). "Furthermore, 'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* (quoting *Newman*, 703 F.3d at 764).

Fifth Circuit case law clearly establishes that "once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Id.* "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors]." *Id.* at 524–25 (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (alteration in original)). In *Bush*, the Fifth Circuit held an officer who slammed an arrestee's face into a nearby vehicle while the arrestee was not resisting arrest or attempting to flee was objectively unreasonable. 513 F.3d at 502. Further, in *Newman*, the Fifth Circuit ruled tasing an unarmed arrestee who the police officers did not believe to be armed was objectively unreasonable. *Newman*, 703 F.3d at 762. Comparatively, in *Cooper*, the Fifth Circuit held the arresting officer acted objectively unreasonable when he allowed his canine

10

to attack an arrestee who did not attempt to resist arrest or flee, and who the officer had no reason to believe posed an immediate threat. *Cooper*, 844 F.3d at 525.

Here, taking all the pleaded facts as true, Peace did not attempt to resist arrest or flee, but was subdued and restrained at the time Officer Neighbors delivered the blows at issue. Moreover, Officer Neighbors did not have any reason to believe Peace posed an immediate threat. Accordingly, Officer Neighbors had "fair warning" that subjecting Peace to multiple blows to the face while Peace was being restrained by officers, after Peace had slumped to the ground, and also after he appeared "knocked out" was objectively unreasonable.

Therefore, the Court finds Peace has pleaded facts that his right was clearly established. Moreover, because the answers to both questions in the Court's qualified immunity analysis favor Peace, the Court finds Officer Neighbors is not entitled to dismissal based on qualified immunity.

## II. Texas Common Law Assault

Turning to Officer Neighbors's motion to dismiss the Texas state law assault claim, Officer Neighbors asserts that Peace cannot not assert this claim against him individually because it is barred by the Texas Tort Claims Act ("TTCA"). The Court agrees that under Texas Supreme Court precedent, Peace cannot assert a plausible Texas common law assault claim against Officer Neighbors.[5]

Under the TTCA, sovereign immunity or governmental immunity means that the State may not be sued in tort, and the State is protected from vicarious liability for the tortious acts of its agents or employees acting in the scope of their employment. *Davis v. City of Palestine*, 988 S.W.2d 854, 857 (Tex. App.—Tyler 1999, no writ). Thus, the State and other governmental

---

[5]Although Peace disagrees with the Texas Supreme Court's decision in *Franka v. Velasquez*, the Court is bound by Texas Supreme Court precedent. 332 S.W.3d 367, 382 n.68 (Tex. 2011).

entities are immune from liability unless liability is waived by a constitutional or legislative provision. *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994).

Section 101.057 of the TTCA, provides the exception to the waiver, which states that "[t]his chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE § 101.057. Peace's claim of assault is an intentional tort. Thus, under Section 101.057, the City is immune from suit for these intentional torts. However, Peace strategically asserted this claim only against Officer Neighbors, possibly to avoid the TTCA's election-of-remedies provision, which requires a plaintiff to make an irrevocable election to seek recovery from a government unit or an employee of that unit. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(a). A suit against the government unit triggers subsection (a) and bars suit against an employee who has been sued in his individual rather than official capacity. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(a). The TTCA also bars claims against the individual employee for claims that "could have been brought under [the TTCA]." § 101.106(f).

Peace asserts that under § 101.106(f) of the TTCA, an employee can only move to dismiss tort claims against the employee that "could have been brought under [the TTCA]." TEX. CIV. PRAC. & REM. CODE § 101.106(f). Thus, since intentional tort claims cannot be "brought under" the TTCA (because the TTCA does not waive intentional tort claims), he should be allowed to pursue his assault claim against Officer Neighbors individually. However, Peace acknowledges that the Texas Supreme Court has interpreted the phrase "could have been brought under this chapter" to refer to any common-law tort claim, whether or not the TTCA waives immunity for such claim, *Franka v. Velasquez*, 332 S.W.3d 367, 382 n.68 (Tex. 2011), and has extended this interpretation to apply to tort claims made against police officers incident to a plaintiff's arrest. *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014).

12

The TTCA does not provide for recovery against individuals employed by the state acting within the scope of their employment. *Aguilar v. Chastain,* 923 S.W.2d 740, 744 (Tex. App.—Tyler 1996, writ denied); *see Tipps v. McCraw*, 945 F. Supp. 2d 761, 767 (W.D. Tex. 2013) ("[Section] 101.106(f) protects employees even in their individual capacities, as the Texas Supreme Court clarified in its recent opinion *Franka v. Velasquez,* 332 S.W.3d 367 (Tex. 2011). The court held that § 101.106 'foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment.'") (quoting *Franka*, 332 S.W.3d at 381).

Thus, Officer Neighbors's motion to dismiss is granted as to Peace's Texas state law assault claim. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(e).

## CONCLUSION

It is therefore **ORDERED** that Officer Neighbors's Second Motion to Dismiss Under Rule 12, Alternative Motion for Rule 7 Reply (Dkt. #15) is **DENIED** in part and **GRANTED** in part. Officer Neighbors's motion is denied as to his asserted § 1983 qualified immunity defense. Officer Neighbors's motion is granted as to Peace's state law claim for assault.[6]

It is further **ORDERED** that Peace is permitted to obtain discovery from Officer Neighbors, limited to the issue of qualified immunity.[7]

**SIGNED this 20th day of April, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[6] The Court finds it unnecessary to address Officer Neighbors's state qualified/official immunity defense.

[7] The Court should only allow such discovery, which is "narrowly tailored to uncover only those facts needed to rule on the immunity claims." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2013) (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 507-508 (5th Cir. 1987)).